## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Case No. 1:21-cv-2713-WJM-NYW

STEPHEN E. COLLINS; RESORT MEETING SOURCE, a Colorado limited liability company; on behalf of themselves and others similarly situated,

      Plaintiffs,

v.

PATRICK MEYERS, in his official capacity as Executive Director of the Colorado Office of Economic Development and International Trade,

      Defendant.

---

## MOTION FOR TEMPORARY RESTRAINING ORDER
## AND PRELIMINARY INJUNCTION

---

Plaintiffs Stephen Collins and Resort Meeting Source LLC move pursuant to Fed. R. Civ. P. 65 for a temporary restraining order and a preliminary injunction enjoining Defendant from enforcing or giving any effect to the minority-owned business preferences of a recent Colorado law, SB 21-001, in distributing COVID-19 relief grants through the Disproportionately Impacted Business Grant Program. *See* Colo. Rev. Stat. § 24-48.5-127(2)(c)(II); *id.* § 24-48.5-127(3)(b)(I).

### CERTIFICATE OF CONFERRAL

Pursuant to D.C.COLO.LCivR 7.1(a) and D.C.COLO.LCivR 65, counsel for Plaintiffs attempted to confer with Defendant and his counsel before the filing of this motion. Counsel emailed LeeAnn Morrill and Michael Kotlarcyzk of the Colorado Attorney General's Office and Defendant Patrick Meyers at 9:44 AM PT on October 7, 2021 to inform them of Plaintiffs' intent

to file a complaint, this motion for temporary restraining order and a preliminary injunction, and a motion for class certification. Ms. Morrill and Mr. Kotlarcyzk represented Defendant in a related case. At 3:30PM PT on October 7, Plaintiffs' counsel sent Ms. Morrill, Mr. Kotlarcyzk, and Mr. Meyers a follow-up email with a copy of the filed complaint and advance copies of the documents to be relied on in support of this motion: Plaintiffs' Motion for a Temporary Restraining Order and Preliminary Injunction, and Declaration of Stephen Collins in Support of Plaintiffs' Motion for a Temporary Restraining Order and Preliminary Injunction. As of the filing of this motion, counsel has not received a response. Further, as noted below, Plaintiffs do not oppose a hearing, but respectfully request that a hearing to be set promptly so that a decision can be issued before the grants are awarded during the week of October 18.

## INTRODUCTION

The COVID-19 pandemic, along with emergency measures designed to minimize its spread, have devastated small businesses across the country. In December 2020, the Colorado General Assembly enacted a comprehensive COVID relief package designed to alleviate the economic impacts of the pandemic on small businesses across the state. Yet although many small businesses have suffered revenue losses as a result of the pandemic, the General Assembly excluded non-minority-owned small businesses from benefiting from $4 million dollars allocated for grants, loans, and technical assistance. The General Assembly then amended the law after a non-minority-owned barbershop and its owner filed a civil rights lawsuit challenging its race-based provisions. But the new law continues to discriminate on the basis of race in violation of the Equal Protection Clause of the Fourteenth Amendment.

Plaintiffs are Resort Meeting Source LLC, an event-planning business, and its owner and sole proprietor Steve Collins. Since March 2020, Resort Meeting Source has suffered revenue losses of roughly 30 percent—in large part due to pandemic-related cancellations of large events over the past 18 months. Plaintiffs have applied for a grant under the Disproportionately Impacted Businesses Grant program, which incorporates the minority-owned business preference of Colorado's amended law. The minority-owned business preference prevents Resort Meeting Source, a non-minority-owned business, from competing on equal footing for grants under the program. And because grant recipients will be announced the week of October 18, a temporary restraining order is necessary to prevent Defendant from applying the minority-owned business preference in awarding grants.

Plaintiffs' class-action lawsuit alleges that Defendant's minority-owned business preference, as codified in SB 21-001 and implemented in the Disproportionately Impacted Business Grant program, violates the Equal Protection Clause of the Fourteenth Amendment. The Colorado Office of Economic Development and International Trade (OEDIT) is responsible for implementing the minority-owned business preference and for selecting the recipients of grants under the program. Plaintiffs seek to enjoin Defendant Patrick Meyers, in his official capacity as Executive Director of OEDIT, from giving any force to the minority-owned business preference.

All four elements of the standard for obtaining preliminary relief are satisfied: Plaintiffs are likely to succeed on the merits of their Equal Protection claim; they will suffer irreparable harm in the absence of preliminary relief; the balance of harms tips in Plaintiffs' favor; and an injunction is in the public interest. Most notably, the minority-owned business preference draws a distinction based on a racial classification and therefore cannot pass constitutional scrutiny unless it is

3

narrowly tailored to a compelling governmental interest. It meets neither requirement. The minority-owned business preference does not further a compelling interest because the General Assembly has failed to assert that the preference remedies any racial discrimination in a relevant local industry. And it is not narrowly tailored because the law does not explain why the same race-neutral methods that Colorado uses to distribute other COVID relief funds do not suffice to distribute the 1.7 million dollars in grant money here.

The additional requirements of Fed. R. Civ. Proc. 65(b)(1) are also met. Plaintiff Collins' declaration shows that, because Colorado will rapidly distribute grants on the basis of an unconstitutional preference, a temporary restraining order is needed to prevent Defendant from distributing the funds in a racially discriminatory manner before this Court can issue a decision on the preliminary injunction motion.

## BACKGROUND

### I.    Plaintiffs Resort Meeting Source LLC and its Owner Steve Collins

Steve Collins is the owner and sole proprietor of Resort Meeting Source, a limited liability company that Mr. Collins established in 2002. *See* Decl. of Stephen E. Collins at ¶ 2. Resort Meeting Source helps individuals and businesses alike plan meetings and events around the United States. *Id.* Event planning can require bookings made years in advance, and the event planning company does not usually receive revenue for successful events until after they take place. *Id.*

Resort Meeting Source had booked several large events that were scheduled to take place in the past 18 months. *Id.* ¶ 4. In 2020, Resort Meeting Source had a large event scheduled at the Snowbird Resort in Utah. In 2021, the business had a large event booked for the Hilton Penn's Landing in Philadelphia. *Id.* Mr. Collins had been planning both events for three years, but both

were cancelled in light of the pandemic. *Id.* Between the two events alone, Resort Meeting Source suffered revenue losses of around $26,000. *Id.* Plaintiffs' revenue losses were not limited to those two events. Since March 2020, Resort Meeting Source's year-over-year revenue has declined by nearly 30 percent, and the event-planning portion of the business has suffered a 100 percent decline. *Id.* ¶ 3.

Plaintiffs have applied for multiple grants designed to help struggling small businesses, such as Resort Meeting Source, navigate the coronavirus pandemic. Plaintiffs previously applied for a grant pursuant to a different program: the Energize Colorado Gap Fund. *Id.* ¶ 5. The Gap Fund is a "public- and privately-funded equity program geared towards Colorado small business owners who have been impacted by the COVID-19 pandemic."[1] In distributing grants of up to $15,000, the Gap Fund gave priority to "Black, Indigenous, People of Color, Veteran-owned, Woman-owned or rural businesses."[2] At the end of the day, the Gap Fund distributed 25 million dollars in grants, but denied Plaintiffs' application without explanation. Collins Decl. ¶ 5.

Plaintiffs have also applied for a grant under the program challenged in this case: the Disproportionately Impacted Business Grant program.[3] As discussed further below, this program also provides a preference to minority-owned businesses. Mr. Collins meets all of the eligibility requirements for receiving a grant and submitted a timely application on behalf of Resort Meeting

---

[1] https://energizecolorado.com/gap-fund/
[2] *Id.*
[3] https://oedit.colorado.gov/disproportionately-impacted-business-grant

Source. Collins Decl. ¶ 6. Nonetheless, because Resort Meeting Source is not a minority-owned business, *id.*, its application will be placed at a disadvantage because of Mr. Collins' race.

## II.     SB 21-001: Colorado's Amended COVID-19 Relief Bill and the Minority-Owned Business Preference

In December 2020, the General Assembly enacted SB 20B-001,[4] which reserved $4 million of COVID relief solely for minority-owned businesses. After a barbershop based in Colorado Springs and its owner Etienne Hardre filed a civil rights lawsuit to challenge SB 20B-001's race-based exclusion,[5] Colorado enacted an amended COVI9-19 relief bill: SB 21-001.[6] SB 21-001 did not eliminate the preference for minority-owned businesses. Instead, it allocated the same $4 million appropriated in the original bill, now designated for "disproportionately impacted businesses," in a way that still prefers businesses that are owned by racial minorities. Specifically, SB 21-001 defines "disproportionately impacted business" as a business that meets at least one of seven criteria—one of which is whether the business is minority-owned.[7] *See* SB 21-001 § 1(2)(c). Under the amended bill, a business is a "disproportionately impacted business" if it meets any one

---

[4] Plaintiffs respectfully request that this Court take judicial notice of the laws cited in this motion as well as the content of a government agency's website. *See Management New Mexico ex rel. Richardson v. Bureau of Land Managment,* 565 F.3d 683, 702 n.22 (10th Cir. 2009) (taking judicial notice of information referenced on two federal agencies' websites).

[5] Plaintiffs' counsel in this case represented Mr. Hardre in filing an amended complaint and a motion for preliminary injunction. The case was dismissed on ripeness grounds because OEDIT had not published eligibility criteria. *Hardre v. Markey*, 20-cv-3594, 2021 WL 1541714 (D. Colo. Apr. 17, 2021). In September 2021, OEDIT published eligibility criteria.

[6] SB 21-001 has been codified at Colo. Rev. Stat. § 24-48.5-127. For ease of reference, Plaintiffs will refer to the law as SB 21-001 throughout this motion, and all citations are to SB 21-001 unless otherwise noted.

[7] A minority-owned business is defined as "a business that is at least fifty-one percent owned, operated, and controlled by an individual who is a member of a minority group, including an individual who is African American, Hispanic American, or Asian American." SB 21-001 § 1(2)(g).

of seven criteria, such as having "five or fewer employees, including the business owner" § 1(2)(c)(I), or is a minority-owned business. § 1(2)(c)(II). Importantly for purposes of Plaintiffs' lawsuit, SB 21-001 requires OEDIT to provide a preference to businesses that qualify as minority-owned and that meet at least one other criterion in the section defining disproportionately impacted businesses. § 1(3)(b)(I).

### III.     The Disproportionately Impacted Business Grant Program

SB 21-001 requires OEDIT to "establish policies setting forth the parameters and eligibility for the program," including caps on the amount of a relief grant and eligibility requirements. *Id.* § 1(3)(b). On September 16, 2021, OEDIT published such policies. It announced that it will distribute grants under SB 21-001 through the newly established Disproportionately Impacted Grant Program.[8] The program will distribute $1.7 million in grants to small businesses in amounts ranging from $1,500 to $10,000 per grant. OEDIT also established a host of eligibility requirements. Small business owners must be able to establish that, among other things, the business has been in existence since January 1, 2020, has shown at least 20 percent income loss since March 26, 2020, and has received less than $20,000 in federal or state loans under the CARES Act.[9] A business must also meet one of the "disproportionately impacted business" criteria under SB 21-001, such as qualifying as a minority-owned business.

OEDIT instructed small business owners to apply through a third party administrator, the Colorado Enterprise Fund, between September 17 and October 3, 2021.[10] The Enterprise Fund's application page requires businesses to identify whether it is minority-owned and notes that

---

[8] https://oedit.colorado.gov/disproportionately-impacted-business-grant
[9] *Id.*
[10] https://coloradoenterprisefund.org/dib-grant-program

minority-owned businesses will be prioritized in the award of grants. Collins Decl. ¶ 6. After reviewing the application materials, the Enterprise Fund sends a list of eligible recipients for grants to OEDIT, which makes the final determination of award recipients and award amounts. Grant awards will be announced the week of October 18 and distributed the week of October 25.[11]

## STANDARD OF DECISION

To obtain a preliminary injunction or a temporary restraining order, Plaintiffs must establish that four equitable factors weigh in their favor: (1) they are substantially likely to succeed on the merits; (2) they will suffer irreparable injury if the injunction is denied; (3) their threatened injury outweighs the injury the opposing parties will suffer under the injunction; and (4) the injunction would not be adverse to the public interest. *Beltronics USA, Inc. v. Midwest Inventory Distribution, LLC*, 562 F.3d 1067, 1070 (10th Cir. 2009); *Colorado v. DeJoy*, 487 F. Supp. 3d 1061, 1064 (D. Colo. 2020). The third and fourth factors merge where, like here, the government is the opposing party. *Nken v. Holder*, 556 U.S. 418, 435 (2009). Rule 65(b)(1) of the Federal Rules of Civil Procedure permits the Court to issue a temporary restraining order if: (a) "specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition"; and (b) "the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required." In this Circuit, a movant for certain types of disfavored injunctions must make a "strong showing" on the likelihood of success on the merits and balance of harm

---

[11] *Id.* On October 6, 2021, OEDIT announced that it will accept applications in late October for another round of funding pursuant to the Disproportionately Impacted Business Grant Program. *See supra* n.9. That announcement does not change the fact that *this* round of grants will be distributed in a racially discrimination manner, nor does it change the fact that program funds will likely be depleted before a final judgment on the merits.

factors. *See Free the Nipple-Fort Collins v. City of Fort Collins*, 916 F.3d 792, 797 (10th Cir. 2019) (listing disfavored injunctions). Here, the Court need not decide whether the stricter standard applies because a preliminary injunction is warranted under either standard. *See id.* at 797–98.

## ARGUMENT

### A.   PLAINTIFFS ARE LIKELY TO PREVAIL ON THE MERITS

Plaintiffs will likely prove that the minority-owned business preference in SB 21-001 violates the Equal Protection Clause. Laws that distribute benefits or burdens on the basis of racial classifications, such as SB 21-001, are subject to strict scrutiny. *See Parents Involved in Community Schools v. Seattle Sch. Dist. No. 1*, 551 U.S. 701, 720 (2007). This stringent standard is necessary because "racial classifications are simply too pernicious to permit any but the most exact connection between justification and classification." *Id.* (internal quotations omitted). And because racial classifications "carry a danger of stigmatic harm," they must be "strictly reserved for remedial settings," lest they "promote notions of racial inferiority and lead to a politics of racial hostility." *City of Richmond v. J.A. Croson Co.*, 488 U.S. 469, 493 (1989).

Colorado's minority-owned business preference plainly imposes racial classifications. Like the program invalidated in *Croson*, SB 21-001 defines a minority-owned business as "a business that is at least fifty-one percent owned, operated, and controlled by an individual who is a member of a minority group, including an individual who is African American, Hispanic American, or Asian American." § 1(2)(g).

The minority-owned business preference "distributes burdens or benefits on the basis of individual racial classifications" in two respects. *Parents Involved*, 551 U.S. at 720. First, SB 21-001 expressly requires OEDIT to prioritize minority-owned businesses in distributing

grants under the Disproportionately Impacted Business Grant program. *See* § 1(3)(b)(I). Second, the process for qualifying as a disproportionately impacted business differs for minority-owned and non-minority-owned businesses. A minority-owned business, unlike a non-minority-owned business, automatically qualifies as a disproportionately impacted business regardless of whether it meets any of the other criteria. *Id.* § 1(2)(c)(II). This mechanical treatment of all minority-owned businesses as "disproportionately impacted businesses" threatens to deplete the pot of scarce resources for needy minority-owned and non-minority-owned businesses alike.[12]

As a result, the minority-owned business preference is subject to strict scrutiny. *See Adarand Constructors, Inc. v. Pena*, 515 U.S. 200, 227 (1995). That stringent standard places the burden on Defendant to show that Colorado's minority-owned business preference both (1) furthers a compelling governmental interest, and (2) is narrowly tailored to further that interest. *Id.* at 220. Plaintiffs are likely to succeed in proving that the preference fails both requirements.

1.   **Colorado's Minority-Owned Business Preference Does Not Further a Compelling Interest**

The Supreme Court has recognized only two interests as compelling enough to justify racial classifications: (1) remedying the past effects of de jure discrimination; and (2) diversity in higher education. *Parents Involved*, 551 U.S. at 720–22. The interest in diversity in higher education is plainly inapplicable here. Thus, Defendant can only justify the minority-owned business preference by proving an interest in remedying the past effects of de jure discrimination. To meet

---

[12] Consider, by analogy, a small boutique hotel that offered a free stay in a limited number of rooms during Memorial Day weekend to two groups of people: individuals who had previously stayed with the hotel and any Caucasian resident in the state. A court would have little difficulty holding, under the relevant statutory provisions, that the hotel engaged in racial discrimination, and that individuals who had previously stayed with the hotel were injured by the hotel's gratuitous extension of this benefit to people on the basis of race.

this burden, they must satisfy two conditions. *See Concrete Works of Colo., Inc. v. City and County of Denver*, 321 F.3d 950, 958 (10th Cir. 2003). "First, [they] must identify the past or present discrimination with some specificity." *Id.* (internal quotations omitted). "Second, [they] must also demonstrate that a strong basis in evidence supports [the] conclusion that remedial action is necessary." *Id.* (internal quotations omitted). These criteria are met where the record contains "extensive evidence supporting [the government's] position that it had a strong basis in evidence for concluding that" racial classifications "were necessary to remediate discrimination against" minority-owned businesses. *Id.* at 990. For example, they were met where the information upon which racial classifications were predicated indicated persistent discrimination in a local industry in which the government was, "at least, an indirect participant." *Id.*

Defendant can make no such showing here. Colorado's initial COVID-19 relief bill attempted to justify its racial classifications with a scant assertion that "[s]mall, minority-owned, and women-owned businesses are among those most impacted by the pandemic." SB 20B-001 § 1(b). The current iteration of the minority-owned business preference attempts to bolster the government's interest by citing a collection of studies and articles. *See* SB 21-001 § 1. But that attempt falls flat.

The documents referenced in SB 21-001 cannot show a compelling interest in remedying the past effects of de jure discrimination for two reasons. First, the bulk of documents cited in the current bill refer to evidence of disparities between businesses that are minority-owned and businesses that are not. Without more, there may be "numerous explanations" for those disparities, including "past societal discrimination in education and economic opportunities" and differing "career and entrepreneurial choices." *Croson*, 488 U.S. at 503.

Second, the documents cited in SB 21-001 do not show racial discrimination in any "local industry," much less one in which the government was either a direct or, "at least, an indirect participant." *Concrete Works*, 321 F.3d at 990. On the contrary, the documents range from a study conducted by the Federal Reserve Bank of New York, *see* § 1(1)(h)(I), to a summary of simulations conducted by an economics professor in a working paper published by the Stanford Institute for Economic Policy Research. *See id.* § 1(f)-(g). Nowhere do the several pages of findings claim either persistent discrimination in Colorado or that the government was at least a passive participant in such discrimination. *See id.* § 1. That is fatal to any assertion of a compelling interest here. At most, a few of the reports allege broad lending discrimination, *see id.* § 1(1)(h)(II) (citing an article by the Brookings Institution). But such allegations "are of little probative value in establishing identified discrimination" in any particular industry in Colorado. *See Croson*, 488 U.S. at 500.

### 2.    Colorado's Minority-Owned Business Preference Is Not Narrowly Tailored

The minority-owned business preference also is not narrowly tailored. The narrow tailoring analysis requires Defendant to engage in "serious, good faith consideration of workable race-neutral alternatives" that would allow them to achieve the interest they believe to be compelling. *Grutter v. Bollinger*, 539 U.S. 306, 339 (2003). SB 21-001 fails to mention any consideration of race-neutral alternatives. Yet if Colorado believed that lending discrimination around the country disproportionately affect minority-owned businesses in this state, *see* § 1(1)(h)(II), it could ramp up enforcement of its antidiscrimination laws in lending. Or it could provide "training and financial aid for disadvantaged entrepreneurs of all races." *Croson*, 488 U.S. at 509–10. Indeed, both the initial and current iteration of Colorado's COVID-19 relief bill shows that the General Assembly

understands how to distribute COVID relief without resorting to racial classifications, as the initial bill provided $37 million in COVID relief for businesses in certain industries. *See* SB 20B-001 § 2(3) (appropriation); *id.* § 2(1)(f) (listing eligible industries). And many of the criteria for disproportionately impacted businesses contained in SB 21-001 do not rely on racial classifications. *See* § 1(2)(c).

The "random inclusion of racial groups" for which there is no evidence of past discrimination further demonstrates that a program is not narrowly tailored. *See Croson*, 488 U.S. at 506. As stated above, the General Assembly failed to provide any evidence of racial discrimination in any relevant local industry. And although the General Assembly recited one study concluding that, on average, black business owners were more likely to be denied PPP loans due to lending discrimination, *see* § 1(1)(h)(II), the bill that it enacted ostensibly provides a preference for a business owned by *any* racial minority. *Id.* § 1(2)(g).[13] The inclusion of various racial minority, regardless of whether the group has suffered racial discrimination in a relevant local industry, "suggests that perhaps the [General Assembly's] purpose was not in fact to remedy past discrimination." *Croson*, 488 U.S. at 506.

**B.      PLAINTIFFS WILL SUFFER IRREPARABLE HARM WITHOUT A TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION**

The minority-owned business preference inflicts irreparable harm on Plaintiffs by violating their right to equal protection under the law. *See Free the Nipple*, 916 F.3d at 805. As the Tenth

---

[13] In the *Hardre* case cited above, Defendant argued that Native-American-owned businesses do not count as minority-owned businesses under SB 21-001. But even if this Court were to accept this counterintuitive interpretation as true, it would still not change the fact that the minority-owned business preference benefits racial groups for which no evidence of past racial discrimination in the relevant industry has been established.

Circuit recently observed, courts routinely "consider the infringement of a constitutional right enough and require no further showing of irreparable injury." *Id.* at 805. As the court explained, what makes an injury "irreparable" is the inadequacy of a monetary remedy after a full trial—and "any deprivation of any constitutional right fits that bill." *Id.* at 806. Because the minority-owned business preference violates Plaintiffs' rights under the Equal Protection Clause, they need not show any further irreparable harm, including any monetary harm. *See id.*

Further, Defendant will announce the winner of grants during the week of October 18, and distribute the funds the week of October 25. Absent a temporary restraining order and a preliminary injunction, those funds will almost certainly be exhausted well before this case resolves on the merits, thus depriving Plaintiffs of equal opportunity to compete for those scarce funds under race-neutral criteria.[14] And the Eleventh Amendment would prevent Plaintiffs from seeking monetary damages after the fact. *See Kan. Health Care Ass'n v. Kan. Dep't of Soc. & Rehab. Servs.*, 31 F.3d 1536, 1543 (10th Cir. 1994) (where Eleventh Amendment bars retrospective monetary relief against a state, the plaintiff's injury is irreparable).

## C.     THE BALANCE OF HARMS TIPS IN FAVOR OF PLAINTIFFS AND THE PUBLIC INTEREST WOULD BE SERVED BY THE ISSUANCE OF A TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

The third and fourth factors merge when, like here, the government is the opposing party. *Nken*, 556 U.S. at 435. The irreparable harms that Plaintiffs will suffer without a preliminary injunction and temporary restraining order outweigh the harm that this preliminary relief would

---

[14] As required by Federal Rule of Civil Procedure 65(b)(1), Plaintiff Collins submitted a declaration that demonstrates immediate and irreparable harm that he and other proposed class members would suffer absent a temporary restraining order halting Defendant from applying the racial preferences called for in SB 21-001 and the Disproportionately Impacted Business Grant program.

cause Defendant. When a constitutional right hangs in the balance, even a temporary loss of that right usually trumps any harm to Defendant. *Free the Nipple*, 916 F.3d at 806. Moreover, Defendant is not at risk of suffering any harm at all. Plaintiffs' proposed injunction would not prevent Defendant from distributing COVID-19 relief. On the contrary, it would only require him to do so without giving a preference to businesses on the basis of race. By contrast, Plaintiffs would suffer an irreparable violation of their constitutional rights absent a preliminary injunction and temporary restraining order. And Plaintiffs would be forced to compete for scarce funds distributed in a way that disadvantages non-minority-owned businesses like Resort Meeting Source. Moreover, "it is always in the public interest to prevent a violation of a party's constitutional rights." *Awad v. Ziriax*, 670 F.3d 1111, 1132 (10th Cir. 2012) (internal quotations omitted).

### D.   NO SECURITY SHOULD BE REQUIRED

Trial courts have "wide discretion under Rule 65(c) in determining whether to require security." *RoDa Drilling Co. v. Siegal*, 552 F.3d 1203, 1215 (10th Cir. 2009) (internal quotation omitted). Here, Defendant cannot show that the issuance of a temporary restraining order and preliminary injunction would cause him any harm. *See, e.g., Winnebago Tribe of Neb. v. Stovall*, 341 F.3d 1202, 1206 (10th Cir. 2003). No bond or other security should be required.

### CONCLUSION

Plaintiffs' Motion for a Temporary Restraining Order and a Preliminary Injunction should be granted.

DATED: October 8, 2021.

Respectfully submitted,

PACIFIC LEGAL FOUNDATION

/s/ Wencong Fa
Wencong Fa
930 G Street
Sacramento CA 95814
Telephone: (916) 419-7111
WFa@pacificlegal.org

/s/ Glenn E. Roper
Glenn E. Roper
1745 Shea Center Dr., Ste. 400
Highlands Ranch, CO 80129
Telephone: (916) 419-7111
GERoper@pacificlegal.org

*Attorneys for Plaintiffs*