IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez

Civil Action No. 21-cv-2713-WJM-NYW

STEPHEN E. COLLINS,
RESORT MEETING SOURCE, a Colorado limited liability company,
on behalf of themselves and others similarly situated,

    Plaintiffs,

v.

PATRICK MEYERS, in his official capacity as Executive Director of the Colorado Office of Economic Development and International Trade,

    Defendant.

## ORDER GRANTING IN PART AND RESERVING RULING IN PART ON PLAINTIFFS' MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

Plaintiffs Stephen E. Collins and Resort Meeting Source LLC (jointly, "Plaintiffs"), on behalf of themselves and others similarly situated, file this lawsuit against Defendant Patrick Meyers, in his official capacity as Executive Director of the Colorado Office of Economic Development and International Trade ("OEDIT") to enjoin Defendant from enforcing or giving any effect to the minority-owned business preferences set forth in a recent Colorado law, SB 21-001, in distributing COVID-19 relief grants through the Disproportionately Impacted Business Grant Program. *See* Colo. Rev. Stat. § 24-48.5-127(2)(c)(II); *id.* § 24-48.5-127(3)(b)(I).

Currently before the Court is Plaintiffs' Motion for Temporary Restraining Order ("TRO") and Preliminary Injunction ("Motion"), which was filed on October 8, 2021. (ECF No. 5.)  Although counsel for Defendant have filed an appearance in this case,

given the immediate action required of it, the Court elects to proceed with that portion of the Motion seeking a TRO. (ECF Nos. 8, 9.) Thus, with respect to Plaintiffs' request for entry of a TRO, the Court finds and concludes as follows.

## I. BACKGROUND[1]

Collins is the Caucasian owner and sole proprietor of Resort Meeting Source, a limited liability company established in 2002 that helps individuals and business plan meetings and events around the United States. (ECF No. 1 ¶ 8; ECF No. 6 ¶ 2.) In the past eighteen months, Resort Meeting Source has had at least two events canceled in light of the COVID-19 pandemic, resulting in revenue losses of around $26,000. (ECF No. 6 ¶ 3.) Since March 2020, Resort Meeting Source's year-over-year revenue has declined by nearly 30 percent, and the event-planning portion of the business has suffered a 100 percent decline. (*Id.*)

The Colorado General Assembly has enacted an amended COVID-19 relief bill, SB 21-001, which allocates $4 million for disproportionately impacted businesses. *See* Colo. Rev. Stat. § 24-48.5-127.[2] Specifically, SB 21-001 defines "disproportionately impacted business"[3] as a business that meets at least one of seven criteria—one of

---

[1] The Court takes the facts in this section primarily from the Motion and Declaration of Stephen E. Collins. (ECF Nos. 5, 6.)

[2] Plaintiffs refer to the statute throughout the Motion as "SB 21-001," and the Court will do the same for ease of reference.

[3] "Disproportionately impacted business" means a business that has been disproportionately impacted by the COVID-19 pandemic and that meets any of the following criteria:

    (I) Has five or fewer employees, including the business owner;

    (II) Is a minority-owned business;

    (III) Is located in an economically distressed area;

which is whether the business is minority-owned.[4]  *See* SB 21-001 § 1(2)(c).  The statute also requires OEDIT to provide a preference to businesses that qualify as minority-owned and that meet at least one other criterion in the section defining disproportionately impacted businesses.[5]  *Id.* § 1(3)(b)(I).

      SB 21-001 requires OEDIT to "establish policies setting forth the parameters and eligibility for the program," including caps on the amount of a relief grant and eligibility requirements.  *Id.* § 1(3)(b).  On September 16, 2021, OEDIT published such policies.  (ECF No. 5 at 7.)  It announced that it will distribute grants under SB 21-001 through the newly established Disproportionately Impacted Grant Program.  The program will distribute $1.7 million in grants to small businesses in amounts ranging from $1,500 to $10,000 per grant.  OEDIT instructed small business owners to apply through a third

---

      (IV) The business owner lives in an economically distressed area;

      (V) The business owner has low or moderate income, as determined by the office based on the United States department of housing and urban development's low- and moderate-income data used in the community development block grant program;

      (VI) The business owner has low or moderate personal wealth, based on household net worth as determined by the office, applying relevant federal or state data; or

      (VII) The business owner has had diminished opportunities to access capital or credit.

SB 21-001 § 1(2)(c).

    [4] A minority-owned business is defined as "a business that is at least fifty-one percent owned, operated, and controlled by an individual who is a member of a minority group, including an individual who is African American, Hispanic American, or Asian American."  SB 21-001 § 1(2)(g).

    [5] "The terms of and eligibility for a relief payment, grant, or loan, with preference given to disproportionately impacted businesses that meet the criterion listed in subsection (2)(c)(II) of this section and at least one other criterion listed in subsection (2)(c) of this section."  SB 21-001 § 1(3)(b)(I).

party administrator, the Colorado Enterprise Fund, between September 17, 2021 and October 3, 2021.  (ECF No. 5 at 7.)  After reviewing the application materials, the Enterprise Fund will send a list of eligible recipients for grants to OEDIT, which makes the final determination of award recipients and award amounts.  (*Id.* at 8.)  Grant awards will be announced the week of October 18, 2021 and distributed the week of October 25, 2021.  (*Id.*)

## II. LEGAL STANDARD

"A party seeking a temporary restraining order or preliminary injunction must show: (1) a substantial likelihood that the movant eventually will prevail on the merits; (2) that the movant will suffer irreparable injury unless the injunction issues; (3) that the threatened injury to the movant outweighs whatever damage the proposed injunction may cause the opposing party; and (4) that the injunction, if issued, would not be adverse to the public interest."  *NRC Broad. Inc. v. Cool Radio, LLC*, 2009 WL 2965279, at *1 (D. Colo. Sept. 14, 2009).  The balance of the harms and public interest factors merge when the government is a party.  *See Nken v. Holder*, 556 U.S. 418, 435 (2009).

Federal Rule of Civil Procedure 65(b)(1) permits the Court to issue a temporary restraining order if: (a) "specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition"; and (b) "the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required."

## III. ANALYSIS

**A.      Substantial Likelihood of Success on the Merits**

On this admittedly limited record, the Court finds a substantial likelihood of success on the merits.  Plaintiffs challenge SB 21-001 on the basis that it violates the

4

Equal Protection Clause of the Fourteenth Amendment.  (ECF No. 5 at 9.)  They argue that the minority-owned business preference "plainly imposes racial classifications" and distributes burdens or benefits on the basis of individual racial classifications in two ways.  (*Id.*)  First, they argue that SB 21-001 expressly requires OEDIT to prioritize minority-owned businesses in distributing grants under the Disproportionately Impacted Business Grant Program.  (*Id.* at 9–10 (citing SB 21-001 § 1(3)(b)(I)).)  Second, the process for qualifying as a disproportionately impacted business differs for minority-owned and non-minority-owned businesses.  (*Id.* at 10.)  According to Plaintiffs, a minority-owned business, unlike a non-minority-owned business, automatically qualifies as a disproportionately impacted business regardless of whether it meets any of the other criteria.  SB 21-001 § 1(2)(c)(II).  Plaintiffs assert that "[t]his mechanical treatment of all minority-owned businesses as 'disproportionately impacted businesses' threatens to deplete the pot of scarce resources for needy minority-owned and non-minority-owned businesses alike."  (ECF No. 5 at 10.)

Because the challenged statutory provisions involve racial classifications, they are subject to strict scrutiny.  *Adarand Constructors, Inc. v. Pena*, 515 U.S. 200, 227 (1995) ("Accordingly, we hold today that all racial classifications, imposed by whatever federal, state, or local governmental actor, must be analyzed by a reviewing court under strict scrutiny.")  Under that standard, Defendant must show that the minority-owned business preference furthers a compelling governmental interest and is narrowly tailored to further that interest.  *Id.* at 220; *Gonzalez v. O Centro Espirita Beneficente Uniao de Vegetal*, 546 U.S. 418, 429 (2006) ("[T]he burdens at the preliminary injunction stage track the burdens at trial.").

1.  Compelling Governmental Interest

The Supreme Court has recognized two governmental interests as compelling enough to justify racial classifications: "remedying the effects of past intentional discrimination" and "diversity in higher education." *Parents Involved in Cmty. Sch. v. Seattle Sch. Dist. No. 1*, 551 U.S. 701, 720–22 (2007). The interest in diversity in higher education does not apply in this case, so Defendant must demonstrate that the minority-owned business preference is justified by the government's interest in remedying the effects of past intentional discrimination. The Tenth Circuit has explained the two conditions Defendant must satisfy to meet this burden: "[he] must identify the past or present discrimination with some specificity," and he must "demonstrate that a strong basis in evidence supports its conclusion that remedial action is necessary." *Concrete Works of Colo., Inc. v. City & Cnty. of Denver*, 321 F.3d 950, 958 (10th Cir. 2003) (internal quotation marks and citations omitted).

Here, Plaintiffs argue that Defendant will not be able to make such a showing. (ECF No. 5 at 11.) They argue that SB 21-001 attempts to bolster the government's interest by citing a collection of studies and articles but assert that the "attempt falls flat." (*Id.*) Specifically, Plaintiffs contend that the documents referenced in SB 21-001 cannot show a compelling interest in remedying the past effects of intentional discrimination because the documents refer to evidence of disparities between businesses that are minority-owned and businesses that are not. (*Id.*) According to Plaintiffs, there may be numerous explanations of those disparities that would not demonstrate a compelling government interest here. (*Id.*)

Additionally, Plaintiffs argue that the documents cited in SB 21-001 "do not show racial discrimination in any 'local industry,' much less one in which the government was

either a direct or, 'at least, an indirect participant.'" (*Id.* at 12 (quoting *Concrete Works*, 321 F.3d at 990).)  They state that the documents do not demonstrate persistent discrimination in Colorado, or that the government was at least a passive participant in such discrimination, which would be fatal to an assertion of a compelling government interest.  (*Id.*)

Given the imminent timeframe the Court has from the date the Motion was filed (October 8, 2021) to the date in which OEDIT will start awarding grants under SB 21-001 (October 18, 2021), and accepting Plaintiffs' representations as to the content of the documents allegedly supporting SB 21-001 as accurate and complete, the Court finds that, at this early stage of this proceeding, Plaintiffs have shown a substantial likelihood that Defendant will not be able to prove that there is a compelling government interest in remedying the past effects of racial discrimination.

2.  <u>Narrowly Tailored</u>

The Supreme Court has made clear that narrow tailoring requires "serious, good faith consideration of workable race-neutral alternatives" that would allow Defendant to achieve a compelling government interest.  *Grutter v. Bollinger*, 539 U.S. 306, 339 (2003).  According to Plaintiffs, SB 21-001 fails to mention any consideration of race-neutral alternatives.  (ECF No. 5 at 12.)  Moreover, Plaintiffs point out that Colorado's General Assembly "understands how to distribute COVID relief without resorting to racial classifications, as the initial bill provided $37 million in COVID relief for businesses in certain industries." (*Id.* (citing SB 20B-001 § 2(3) (appropriation); *id.* § 2(1)(f) (listing eligible industries)).)  And the statute itself provides several criteria for disproportionately impacted businesses which do not rely on racial classifications.  *See* SB 21-001 § 1(2)(c).

Based on the very limited record now before the Court, it cannot conclude that the statute will survive strict scrutiny. As such, Plaintiffs have demonstrated a substantial likelihood of success on the merits. To be clear, the Court is not prejudging the content of Defendant's response or the evidence he will provide in response to the Motion, but given the fast-approaching deadline for the OEDIT to award grants, the Court finds that the interests of justice are best served through the immediate issuance of a TRO to preserve the *status quo ante*.

**B.     Irreparable Harm Unless the Injunction Is Issued**

Plaintiffs argue that the minority-owned business preference inflicts irreparable harm on them by violating their right to equal protection under the Fourteenth Amendment, which provides that no state shall "deny to any person within its jurisdiction the equal protection of the laws." (ECF No. 5 at 13 (citing *Free the Nipple-Fort Collins v. City of Fort Collins*, 916 F.3d 792, 805 (10th Cir. 2019)).) The Tenth Circuit has noted that "[m]ost courts consider the infringement of a constitutional right enough and require no further showing of irreparable injury." *Free the Nipple*, 916 F.3d at 805. Here, the Court finds that Plaintiffs will suffer irreparable harm if Defendant applies the allegedly unconstitutional minority-preference provision and awards grants based on that provision.

**C.     Balance of Harms and Public Interest**

The Court further finds that the balance of harms and public interest weigh in favor of temporarily restraining Defendant from awarding grants, now scheduled to commence during the week of October 18, 2021, in order to preserve the *status quo ante* until the Court can consider more fulsome arguments from both parties on the merits. After all, "[i]t is always in the public interest to prevent the violation of a party's

8

constitutional rights." *Hobby Lobby Stores, Inc. v. Sebelius*, 723 F.3d 1114, 1147 (10th Cir. 2013). The Court recognizes that delaying the award of grants may impose limited burdens on Defendant. The Court is of the view, however, that such burdens pale in comparison to the application of a possibly unconstitutional statutory provision in awarding COVID-19 relief funds, and such limited burdens are insufficient to tilt the balance of the equities in the Defendant's favor on this Rule 65 requirement. The Court therefore finds that the balance of harms and public interest weigh in favor of the issuance of a TRO.

### D. Issuance of a TRO Before Defendant Can Respond

To obtain a temporary restraining order before the party to be restrained has an opportunity to appear and respond, a plaintiff must present

> (A) specific facts in an affidavit or a verified complaint clearly show[ing] that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition; and
>
> (B) the movant's attorney['s] certifi[cation] in writing [regarding] any efforts made to give notice and the reasons why it should not be required.

Fed. R. Civ. P. 65(b)(1).

As for requirement "A," Plaintiffs provide the Declaration of Stephen E. Collins, the owner and sole proprietor of Resort Meeting Source, on which the Court has relied to discern the facts meriting a TRO. (ECF No. 6.) The Court finds that Plaintiffs have made a sufficient showing that a TRO should issue without further notice, because grant recipients will be announced the week of October 18, 2021, and a TRO is necessary to prevent Defendant from applying the minority-owned business preference in awarding the grants. As for requirement "B," Plaintiffs have indicated that they have e-mailed

9

notice of the action to Defendant's counsel.  (ECF No. 5 at 1.)  Plaintiffs have also complied with D.C.COLO.LCivR 65.1, describing their efforts to communicate with Defendant's counsel (*id.* at 1–2) and, in any event, counsel for Defendant have filed their appearance in this action.

**E.     Whether to Issue a Bond**

Rule 65(c) states that this Court "may issue a preliminary injunction or a temporary restraining order only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained."  Although phrased as mandatory, in practice the Court has discretion under this Rule whether to require a bond, particularly in public interest cases involving the fundamental rights of citizens.  *See* 11A Charles Alan Wright et al., Federal Practice & Procedure § 2954 n.29 (3d ed., Apr. 2017 update) (citing public rights cases where the bond was excused or significantly reduced).  Given the constitutional dimensions of this dispute, the Court finds that waiving the bond is appropriate in this case.

## IV. CONCLUSION

For the reasons stated above, the Court ORDERS:

1. That portion of Plaintiffs' Motion requesting a TRO (ECF No. 5) is GRANTED;

2. That portion of Plaintiffs' Motion requesting a preliminary injunction remains UNDER ADVISEMENT;

3. Defendant Patrick Meyers, in his official capacity as Executive Director of the Colorado Office of Economic Development and International Trade, as well as his agents, employees, successors, and assigns, and all other persons in active concert or participation with him, is hereby IMMEDIATELY ORDERED AND

      RESTRAINED from enforcing or otherwise giving any effect to the minority-owned business preferences of SB 21-001, in distributing COVID-19 relief grants through the Disproportionately Impacted Business Grant Program, *see* Colo. Rev. Stat. § 24-48.5-127(2)(c)(II); *id.* § 24-48.5-127(3)(b)(I).;

4. This Temporary Restraining Order shall remain in effect until **11:59 p.m. on October 26, 2021**, unless extended by the Court for good cause;

5. Defendant shall respond to that portion of the Motion requesting a preliminary injunction by **October 18, 2021**;

6. Plaintiffs shall file their reply in further support of that portion of the Motion requesting a preliminary injunction by **October 22, 2021**; and

7. Once the Court has obtained all of the briefing on the Motion, it will decide whether a hearing on that portion of the Motion requesting a preliminary injunction is necessary.

Entered at Denver, Colorado, this **12th day of October, 2021 at 3:55 p.m. Mountain Time.**

BY THE COURT:

_____
William J. Martinez
United States District Judge

11