**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**Judge William J. Martínez**

Civil Action No. 21-cv-2713-WJM-NYW

STEPHEN E. COLLINS,
RESORT MEETING SOURCE, a Colorado limited liability company,
on behalf of themselves and others similarly situated,

      Plaintiffs,

v.

PATRICK MEYERS, in his official capacity as Executive Director of the Colorado Office
of Economic Development and International Trade,

      Defendant.

---

## ORDER ON PENDING MOTIONS

---

This civil rights action is before the Court on: (1) Defendant Patrick Meyers's, in
his official capacity as Executive Director of the Colorado Office of Economic
Development and International Trade ("OEDIT"), Motion to Dismiss Under Fed. R. Civ.
P. 12(b)(1) ("Motion to Dismiss") (ECF No. 15); (2) that portion of Plaintiffs Stephen E.
Collins ("Collins") and Resort Meeting Source LLC's (jointly, "Plaintiffs"), on behalf of
themselves and others similarly situated, Motion for Temporary Restraining Order
("TRO") and Preliminary Injunction ("PI") ("Motion for TRO and PI") (ECF No. 5) seeking
a preliminary injunction; and (3) Plaintiffs' Motion for Class Certification (ECF No. 7).

    For the following reasons, the Motion to Dismiss is granted; that portion of
Plaintiffs' Motion for TRO and PI seeking a preliminary injunction is denied as moot; and
Plaintiffs' Motion for Class Certification is denied as moot.

## I. BACKGROUND

Plaintiffs filed this lawsuit against Defendant to enjoin him from enforcing or giving any effect to the minority-owned business preferences set forth in a recent Colorado law, SB 21-001, in distributing COVID-19 relief grants through the Disproportionately Impacted Business Grant Program. *See* Colo. Rev. Stat. § 24-48.5-127(2)(c)(II); *id.* § 24-48.5-127(3)(b)(I).

**A.      Challenged Legislation**

In January 2021, Colorado passed SB 21-001, a program designed to distribute $4 million of state funds to "disproportionately impacted businesses." *See* Colo. Rev. Stat. § 24-48.5-127. The SB 21-001 program challenged in this lawsuit provides "relief payments to disproportionately impacted businesses that have been most impacted by COVID-19 and have lacked meaningful access to federal loans and grants under the CARES Act." *Id.* § 24-48.5-127(3)(a)(I)(A).

To qualify as a disproportionately impacted business under the statute, a business must meet at least one of seven criteria:

> (1) Has five or fewer employees, including the business owner;
>
> (2) Is a minority-owned business;[1]
>
> (3) Is located in an economically distressed area;
>
> (4) The business owner lives in an economically distressed area;
>
> (5) The business owner has low or moderate income, as

---

[1] A minority-owned business is defined as "a business that is at least fifty-one percent owned, operated, and controlled by an individual who is a member of a minority group, including an individual who is African American, Hispanic American, or Asian American." SB 21-001 § 1(2)(g).

> determined by the office based on the United States
> department of housing and urban development's low- and
> moderate-income data used in the community development
> block grant program;
>
> (6) The business owner has low or moderate personal
> wealth, based on household net worth as determined by the
> office, applying relevant federal or state data; or
>
> (7) The business owner has had diminished opportunities to
> access capital or credit.

*Id*. § 24-48.5-127(2)(c).

**B.     OEDIT's Program Guidelines**

The statute directs OEDIT to "establish policies setting forth the parameters and

eligibility for the program."  *Id*. § 24-48.5-127(3)(b).  OEDIT prepared program

guidelines for the relief payments and accepted applications through October 3, 2021.

(ECF No. 15-1 ¶ 9.)  The guidelines defined eligibility for grants and created a maximum

grant amount of $10,000 for all businesses who receive the award.  OEDIT instructed

small business owners to apply through a third party administrator, the Colorado

Enterprise Fund, between September 17, 2021 and October 3, 2021.  (ECF No. 5 at 7.)

After reviewing the application materials, the Enterprise Fund would send a list of

eligible recipients for grants to OEDIT, which makes the final determination of award

recipients and award amounts.  (*Id.* at 8.)  Grant awards were originally set to be

announced the week of October 18, 2021 and distributed the week of October 25, 2021.

(*Id.*)

The preference challenged by Plaintiffs in this lawsuit is addressed in the

guidelines as follows:

> After reviewing the eligibility criteria of each applicant,
> and if the total amount of money asked by participants
> exceeds the resources available in the grant program,

> priority will be given to applicants based on how many
> of the criteria for which they qualify within the
> program.  Priority may be further given by assessing
> applicants' relative business income (criterion 5 within
> the statute) and their relative personal wealth
> (criterion 6 within the statute).  In the event of multiple
> applications appearing equal in the assessment of
> these criteria, preference will be given to
> disproportionately impacted businesses that are both
> minority owned and meet additional statutory criteria.

(*Id.* at 15.)

## C.     Resort Meeting Source Applies for a Grant

Collins is the Caucasian owner and sole proprietor of Resort Meeting Source, a limited liability company established in 2002 that helps individuals and business plan meetings and events around the United States.  (ECF No. 1 ¶ 8; ECF No. 6 ¶ 2.)  In the past eighteen months, Resort Meeting Source has had at least two events canceled in light of the COVID-19 pandemic, resulting in revenue losses of around $26,000.  (ECF No. 6 ¶ 3.)  Since March 2020, Resort Meeting Source's year-over-year revenue has declined by nearly 30 percent, and the event-planning portion of the business has suffered a 100 percent decline.  (*Id.*)

Resort Meeting Source applied for a grant under the program offering aid to disproportionately impacted businesses.  (ECF No. 15-1 ¶ 10.)  According to the Declaration of Michael Landes, the Opportunity Zone Program & Special Projects Director at OEDIT, "internal application review of Resort Meeting Source's application was completed on October 4th [2021]," and Resort Meeting Source's application "was listed as recommended for approval of award receipt."  (*Id.*)

## II. PROCEDURAL HISTORY

On October 7, 2021, Plaintiffs filed their Class-Action Complaint for Declaratory

4

and Injunctive Relief ("Complaint").  (ECF No. 1.)  Plaintiffs bring one claim, alleging a

violation of the Equal Protection Clause of the Fourteenth Amendment to the United

States Constitution under 42 U.S.C. § 1983.  Further, Plaintiffs seek to represent a class

of all non-minority businesses that have applied for a grant under the Disproportionately

Impacted Business Grant Program.  (*Id.* ¶ 59.)  Plaintiffs request that the Court: (1)

declare the minority-owned business preferences in SB 21-001 and in the

Disproportionately Impacted Business Grant Program unconstitutional under the Equal

Protection Clause of the Fourteenth Amendment; and (2) permanently enjoin Defendant

and his agents from enforcing or giving any effect to the minority-owned business

preferences of SB 21-001—namely, sections 1(2)(c)(II) and (3)(b)(I) (codified at 24-

48.5-127(2)(c)(II) and (3)(b)(I))—in distributing the COVID-19 relief payments and from

otherwise discriminating on the basis of race under SB 21-001 and the

Disproportionately Impacted Business Grant Program.  (*Id.* at 15–16.)

On October 8, 2021, Plaintiffs filed their Motion for TRO and PI (ECF No. 5) and

Motion for Class Certification (ECF No. 7).  On October 12, 2021, counsel for Defendant

notified Plaintiffs of the favorable award decision on Resort Meeting Source's

application and requested that they voluntarily dismiss their lawsuit, which Plaintiffs did

not do.  (ECF No. 15-2.)

A few minutes later on October 12, 2021, without knowledge at that time of the

award decision in Plaintiffs' favor, the Court entered its Order Granting In Part and

Reserving Ruling In Part on the Motion for TRO and PI.  (ECF No. 14.)  The Court

issued a TRO and took under advisement that portion of the motion requesting a PI.

The TRO provides:

> Defendant Patrick Meyers, in his official capacity as
> Executive Director of the Colorado Office of Economic
> Development and International Trade [("OEDIT")], as well as
> his agents, employees, successors, and assigns, and all
> other persons in active concert or participation with him, is
> hereby IMMEDIATELY ORDERED AND RESTRAINED from
> enforcing or otherwise giving any effect to the minority-
> owned business preferences of SB 21-001, in distributing
> COVID-19 relief grants through the Disproportionately
> Impacted Business Grant Program, *see* Colo. Rev. Stat. §
> 24-48.5-127(2)(c)(II); *id.* § 24-48.5-127(3)(b)(I)[.]

(*Id.* at 10–11.)  The Court ordered that the TRO would remain in effect until 11:59 p.m. on October 26, 2021, unless extended by the Court for good cause.  (*Id.* at 11.)

A day later, on October 13, 2021, Defendant filed his Motion to Dismiss, arguing that Plaintiffs lack standing for their lawsuit and that their lawsuit is moot.  (ECF No. 15.) In the Motion to Dismiss, Defendant explains that before the lawsuit was filed, OEDIT had determined that Resort Meeting Source and ten other businesses were eligible for the first round of relief payments.  (ECF No. 15 at 4.)  Additionally, Defendant states that the program was undersubscribed and thus there were fewer qualified applicants than available funds.  (*Id.*)  As a result, every applicant who applied for a grant and met the eligibility criteria in the statute and OEDIT's program guidelines will receive a grant.  (*Id.* at 5.)  Under these circumstances, Defendant states that the preference for minority-owned businesses was not a factor in any decision to award or not award a grant, and none of the businesses receiving a grant qualify as a disproportionately impacted business solely because they are a minority-owned business.  (*Id.*)

In the Motion to Dismiss, Defendant explains that shortly after it notified Plaintiffs of the favorable award decision, the Court entered the TRO.  (*Id.* at 6.)  OEDIT had intended to alert the eleven awardees of their eligibility for relief payments on October

13 or 14, 2021.  (ECF No. 15-1 ¶ 18.)  As soon as each awardee confirmed its banking information, the $10,000 relief payment would be distributed.  (*Id.*)  However, in light of the TRO, OEDIT did not send any award letters or distribute relief payments.  (*Id.* ¶ 19.)

Given the rapid developments in this case, on October 15, 2021, the Court entered its Order Clarifying the Court's Temporary Restraining Order and Setting Briefing Schedule on Defendant's Motion to Dismiss.  (ECF No. 20.)  In that Order, the Court set a briefing schedule on the Motion to Dismiss and suspended briefing on that part of Plaintiffs' motion seeking a PI.  (*Id.* at 3.)  Additionally, the Court clarified that "[i]n the Court's view, the TRO does not preclude OEDIT from issuing awards under the Disproportionately Impacted Businesses Grant Program which do not implicate any minority-owned business preferences."  (*Id.* at 2.)

Based on the Court's clarification, on October 19, 2021, OEDIT sent letters to the eleven businesses informing them that they had qualified for, and been awarded, relief payments under the Disproportionately Impacted Business Program.  (ECF No. 21-1 ¶ 3.)  Specifically, one of those letters was sent to Resort Meeting Source, informing it that it had been awarded the maximum available grant under the program guidelines, $10,000, which it will receive once it provides its banking information.  (ECF No. 21-1 at 3–4.)

On October 25, 2021, the Motion to Dismiss became ripe.  On October 26, 2021, the Court entered its Order Extending Temporary Restraining Order and extended the TRO until October 29, 2021 at 11:59 p.m.  (ECF No. 24.)

### III. LEGAL STANDARD

A motion under Federal Rule of Civil Procedure 12(b)(1) is a request for the court

to dismiss a claim for lack of subject matter jurisdiction.  Fed. R. Civ. P. 12(b)(1).  A

plaintiff generally bears the burden of establishing that the court has jurisdiction.  *Basso*

*v. Utah Power & Light Co.*, 495 F.2d 906, 909 (10th Cir. 1974).  When the court lacks

subject matter jurisdiction over a claim for relief, dismissal is proper under Rule 12(b)(1).

*See Jackson v. City & Cnty. of Denver*, 2012 WL 4355556, at *1 (D. Colo. Sept. 24,

2012).

There are two types of motions to dismiss for lack of subject matter jurisdiction:

facial attacks and factual attacks.  *Stuart v. Colo. Interstate Gas Co.*, 271 F.3d 1221,

1225 (10th Cir. 2001).  A facial attack questions merely the sufficiency of the pleading.

*Holt v. United States*, 46 F.3d 1000, 1002 (10th Cir. 1995).  When reviewing a facial

attack, the court takes the allegations in the complaint as true, as in a motion to dismiss

under Fed. R. Civ. P. 12(b)(6).  *Id.*  If those allegations establish a federally cognizable

claim, jurisdiction exists.  *Id.*

In contrast, if a Rule 12(b)(1) motion "challenge[s] the substance of a complaint's

jurisdictional allegations in spite of its formal sufficiency by relying on affidavits or any

other evidence properly before the court[,] '[i]t then becomes necessary for the party

opposing the motion to present affidavits or any other evidence necessary to satisfy its

burden of establishing that the court, in fact, possesses subject matter jurisdiction.'"

*New Mexicans for Bill Richardson v. Gonzales*, 64 F.3d 1495, 1499 (10th Cir. 1995)

(quoting *St. Clair v. City of Chico*, 880 F.2d 199, 201 (9th Cir. 1989)).  On a factual

attack, no presumption of truthfulness applies to the complaint's allegations.  *Holt*, 46

F.3d 1003.  Instead, the court must weigh the conflicting evidence to arrive at the

factual predicate that subject matter jurisdiction does or does not exist.  *Id.*  In making

its decision, the court "has wide discretion to allow affidavits, other documents, and a limited evidentiary hearing to resolve disputed jurisdictional facts." *Stuart*, 271 F.3d at 1225 (citation omitted).

Unless it is shown that no amendment of the pleadings could cure the jurisdictional defect, a dismissal for lack of subject matter jurisdiction generally is not a decision on the merits and, therefore, constitutes a dismissal without prejudice. *See Bruzga v. Cnty. of Boulder*, 795 F. App'x 599, 604–05 (10th Cir. 2020) (stating that a dismissal based on lack of standing should be without prejudice); *see also* Fed. R. Civ. P. 41(b).

## IV. ANALYSIS

### A.      Nature of the Jurisdictional Attack

The Court first considers whether Defendant brings a facial or factual attack for lack of subject matter jurisdiction.  In this case, the parties do not clearly discuss the nature of Defendant's jurisdictional attack.  In his Motion to Dismiss, Defendant notes that the Court "may consider matters outside the pleadings without transforming a motion under Rule 12(b)(1) into one for summary judgment," indicating Defendant considers his attack factual.  (ECF No. 15 at 4 n.1.)  By contrast, Plaintiffs appear to characterize the attack as facial, stating in their response that the Court "must accept as true all material allegations of the complaint, and must construe the complaint in favor of the complaining party."  (ECF No. 19 at 5 (quoting *Warth v. Seldin*, 422 U.S. 490, 501 (1975)).)

Upon consideration, the Court finds that Defendant's attack is factual.  Defendant attacks the allegations in Plaintiffs' Complaint and supports the Motion to Dismiss with extrinsic evidence (*see* ECF Nos. 15-1, 15-2, 21-1).  *See Davis ex rel. Davis v. United*

*States*, 343 F.3d 1282, 1295 (10th Cir. 2003) (noting that the defendants' attack was a factual one, as they challenged not just the plaintiffs' allegations of jurisdiction but also the facts underlying those allegations).  Accordingly, the Court will consider facts outside the pleadings without converting the motion into one for summary judgment. *See Holt*, 46 F.3d at 1000–03; *see also Stuart*, 271 F.3d at 1225.  In addition, the Court will not "presume the truthfulness of [plaintiff's] factual allegations."  *Holt*, 46 F.3d at 1003.

**B.    Standing**

For a court to have subject matter jurisdiction, a plaintiff must have standing. *Friends of the Earth, Inc. v. Laidlaw Env't Servs., Inc.*, 528 U.S. 167, 180–81 (2000).  At its "irreducible constitutional minimum," standing has three elements.  *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992).  First, a plaintiff must suffer an "injury in fact" that is concrete and particularized, and actual or imminent, not conjectural or hypothetical.  *Id.* Second, the injury must be traceable to the challenged action of the defendant.  *Id.* Third, it must be likely that the injury will be redressed by the relief requested.  *Id.* Standing is determined as of the time the action is brought.  *Nova Health Sys. v. Gandy*, 416 F.3d 1149, 1154 (10th Cir. 2005).

The "injury in fact" requirement is satisfied differently depending on whether the plaintiff seeks prospective or retrospective relief.  *See Tandy v. City of Wichita*, 380 F.3d 1277, 1283–84 (10th Cir. 2004) (citing *City of Los Angeles v. Lyons*, 461 U.S. 95, 101–02, 105 (1983)).  To seek prospective relief, as in this case, the plaintiff must be suffering a continuing injury or be under a real and immediate threat of being injured in the future.  *Id.* (citation omitted).  Past wrongs are evidence bearing on whether there is a real and immediate threat of repeated injury.  *Id.* (citation omitted).  However, the

threatened injury must be "certainly impending" and not merely speculative.  *Id.* (citation omitted).  A claimed injury that is contingent upon speculation or conjecture is beyond the bounds of a federal court's jurisdiction.  *Id.* (citing *Whitmore v. Arkansas*, 495 U.S. 149, 158 (1990)).

In *Northeastern Florida Chapter of the Associated General Contractors of America v. City of Jacksonville, Florida*, the Supreme Court explained a plaintiff's injury in the equal protection context.  508 U.S. 656 (1993).  Specifically, the Supreme Court explained that the injury in fact element of standing in an equal protection case is the denial of equal treatment resulting from the imposition of the barrier; in other words, the injury is the "inability to compete on an equal footing in the . . . process . . . ."  *Id.* at 666. The Tenth Circuit further clarifies that this theory of injury "requires some proof of the existence of competition" and "does not grant license to assert injury upon an allegation of competition that itself may be merely hypothetical."  *Day v. Bond*, 500 F.3d 1127, 1134 (10th Cir. 2007).

In his Motion to Dismiss, Defendant argues that there is no present dispute between the parties, as Plaintiffs applied for, and will receive, a $10,000 grant from the Disproportionately Impacted Business Program.  (ECF No. 15 at 7.)  Further, Defendant argues that no injunction or declaration the Court could issue will address any dispute between the parties, and Plaintiffs are not suffering any continuing injury attributable to SB 21-001.  (*Id.*)  Accordingly, Defendant contends that Plaintiffs do not have standing to sue to invalidate the law, and the case is constitutionally and prudentially moot.  (*Id.*)

In response, Plaintiffs assert that at the time they filed the Complaint, Collins had received no indication regarding whether he would receive a grant.  (ECF No. 19 at 7.)

And Plaintiffs rely heavily on the fact that OEDIT had not reached a final decision on their application at the time they filed the Complaint, and as such, OEDIT's "provisional decision" did not eliminate their "injury from being forced to compete in a racially discriminatory process." (ECF No. 22 at 5.) Moreover, Plaintiffs underscore that they have not, to date, received any money under the Disproportionately Impacted Business Program. (ECF No. 19 at 7.) Plaintiffs point to the Colorado Enterprise Fund's website, which states that the "Disproportionately Impacted Business Relief Grant Program is not a first come, first serve grant program. Rather, it is a competitive application process." (ECF No. 22 at 4.) According to Plaintiffs, "[b]eing disadvantaged due to race in a competitive grant program is an actual, not hypothetical, injury." (*Id.*)

Giving due consideration to the parties' competing contentions and arguments on this issue, the Court concludes that Plaintiffs lack standing because they have failed to demonstrate that they have suffered an injury in fact. As Defendant correctly emphasizes, Plaintiffs' arguments assume the existence of competition between themselves and minority-owned businesses. Critically, however, the evidence Defendant has put before the Court unequivocally shows that such competition in fact never existed. (ECF No. 21 at 3.)

The evidence submitted in support of the Motion to Dismiss—namely Landes's declaration—shows that Plaintiffs never competed with other applicants, nor were the minority-owned business preferences applied at all, much less applied to Plaintiffs' detriment. (ECF No. 15-1.) On October 4, 2021, three days before the Complaint in this action was filed on October 7, 2021, OEDIT concluded that Resort Meeting Source qualified as a disproportionately impacted business under multiple definitions, so it was

not disadvantaged as a result of the minority-owned business definition.  (*Id.* ¶ 10.)  As Landes explains, the award recipients were determined based solely on whether they satisfied the statutory criteria and the program guidelines; the filing of Plaintiffs' lawsuit played no role in determining who would receive an award.  (*Id.* ¶ 11.)  And because OEDIT had more than enough funds to award full relief payments to each eligible applicant, including Resort Meeting Source, it never applied the minority-owned business preferences.  (*Id.* ¶ 13.)

To be clear, Landes states that "neither the minority-owned business method of qualifying as a disproportionately owned business, nor the preference for minority-owned businesses established in the program guidelines, played a role in the determination of eligibility for these awards."  (*Id.* ¶ 17.)  In other words, Plaintiffs' application was considered, and approved, independent of any other applicants.[2]

To the extent Plaintiffs quibble with the fact that OEDIT had only *provisionally* recommended approval of their application, as opposed to making the *final* determination of award recipients and amounts (ECF No. 22 at 5), their argument is without merit.  The dispositive fact here, for purposes of the standing analysis, is that OEDIT had not *denied* their application before they filed the Complaint, so Plaintiffs had suffered no injury in fact at that time.  Their distinction between provisional and final approval is one without a difference for the purposes of evaluating injury in fact.

---

[2] To the extent Plaintiffs argue they have standing because they lacked notice of their award before filing their lawsuit (ECF No. 22 at 5; ECF No. 23 ¶ 6), their argument is unavailing. Plaintiffs fail to cite authority to support the proposition that a plaintiff who suffers no injury has standing unless the government advises them prior to filing suit that they have suffered no injury.

Finally, the fact that Plaintiffs brought this lawsuit as a putative class action does not save the day for their claims. It is well-established that a named plaintiff of a class must individually and independently have standing, and that such a putative class representative cannot rely on potential class members' injuries to satisfy his burden. *See, e.g.*, *Warth*, 422 U.S. at 502 (class representatives "must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent"); *Bellwether Cmty. Credit Union v. Chipotle Mexican Grill, Inc.*, 353 F. Supp. 3d 1070, 1089 (D. Colo. 2018) ("[T]he named plaintiffs must allege an actual injury, not an 'injury that has been suffered by other unidentified members of the class.'" (quoting *Spokeo v. Robins*, 578 U.S. 330, 338 n.6 (2016))).

As an initial matter, the Court has not ruled on the Motion for Class Certification, and as a consequence no class has been certified in this action. And, as Defendant underscores, there is no class of affected businesses for Plaintiffs to represent because *every eligible business that sought an award has or will in very short order receive the full grant amount it requested.* (ECF No. 15-1 ¶¶ 13–17.) There is no class of non-minority-owned businesses that competed on unequal footing against minority-owned businesses for the relief payments authorized by SB 21-001.

Based on the foregoing, the Court finds that Plaintiffs lack standing because they have not demonstrated they suffered an injury in fact. Accordingly, their lawsuit must be dismissed for lack of subject matter jurisdiction.[3]

---

[3] Defendant states that this case can "be dismissed solely on the grounds that Plaintiffs lack standing." (ECF No. 21 at 5.) The Court agrees. Because the Court finds that Plaintiffs lack standing, it need not evaluate the parties' arguments concerning whether Plaintiffs' claims are moot.

## V. CONCLUSION

For the reasons stated above, the Court ORDERS the following:

1.   Defendant's Motion to Dismiss Under Fed. R. Civ. P. 12(b)(1) (ECF No. 15) is
     GRANTED;

2.   Plaintiffs' Class-Action Complaint for Declaratory and Injunctive Relief (ECF No.
     1) is DISMISSED WITHOUT PREJUDICE for lack of subject matter jurisdiction;

3.   That portion of Plaintiffs' Motion for Temporary Restraining Order and Preliminary
     Injunction (ECF No. 5) seeking a preliminary injunction is DENIED AS MOOT;

4.   Plaintiffs' Motion for Class Certification (ECF No. 7) is DENIED AS MOOT;

5.   The Temporary Restraining Order (ECF Nos. 14, 24) is DISSOLVED; and

6.   The Clerk of Court shall enter judgment accordingly and shall terminate this
     action.

Dated this 28th day of October, 2021.

BY THE COURT:

William J. Martinez
United States District Judge